IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| FLEET CONNECT SOLUTIONS LLC, | |
|---|---|
| Plaintiff, | |
| V. | Civil Action No. 2:25-cv-00796 |
| REMOTE ASSET MANAGEMENT LIMITED and RAM TRACKING ACQUISITION LIMITED, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this complaint against Remote Asset Management Limited ("Remote Asset Management") and Ram Tracking Acquisition Limited ("RTA Ltd.") (collectively, "Ram Tracking" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 2 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 3 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 4 | 8,494,581 | System and Methods for Management of Mobile Field Assets *via* Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |

|   | Patent Number | Title | Available At |
|---|---|---|---|
| 5 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Based on public information, Defendant Remote Asset Management Limited is a private limited company organized under the laws of England and Wales with its principal place of business located at Charnham Park, Herongate, Hungerford, Berkshire, RG17 0YU, United Kingdom.

5. Based on public information, Defendant Ram Tracking Acquisition Limited is a private limited company organized under the laws of England and Wales with its principal place of business located at 1st Floor, Nelson House, George Mann Road, Hunslett, Leeds, LS10 1DJ, United Kingdom

6. Based on public information, Defendants engage in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## JURISDICTION AND VENUE

7. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-6 above as though fully set forth in their entirety.

8. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action

under 28 U.S.C. § 1331 and § 1338(a).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule).

10. Defendants offer products and services, including through the manufacture, sale, importation, use, and/or testing of Accused Products, and conduct business in this District.

11. Defendants are subject to this Court's specific and general personal jurisdiction under due process due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

12. Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offer their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

13. Defendants commit acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

14. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

15. Based upon public information, Defendants own, operate, advertise, and/or control the website https://www.ramtracking.com/us/ through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

16. Defendants make, use, cause to be used, sell, offer for sale, import, provide, supply, and/or distribute one or more Ram Tracking fleet management platform and tracking solutions, including, but not limited to, the RAM Tracking Fleet Management software/applications/websites, such as GPS Fleet Tracking, Job Scheduling and Tracking App, Ram Tracking, Ram Tracking ELD, and Ram Assist; GPS Tracking devices; Dash cams, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

17. Defendants, using the Accused Products, perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

18. The wireless communications performed and/or implemented by the Defendants using, *e.g.*, the Accused Products, among other things, generate and transmit packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols

19. Defendants, using the Accused Products, perform singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

20. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,206,837**

21. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

22. For purposes of this Count I only, the Accused Products include, but are not limited to, RAM Tracking Fleet Management software/applications/websites, such as GPS Fleet Tracking, Job Scheduling And Tracking App, Ram Tracking, Ram Tracking ELD, and Ram Assist; GPS Tracking devices; Dash cams; and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications (collectively, the "Accused Products").

23. The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.

24. Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

25. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

26. The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

27. The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

28. Defendants have directly infringed one or more claims of the '837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

29. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

30. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,593,751</u>

31. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

32. For purposes of this Count II only, the Accused Products include, but are not limited to, RAM Tracking Fleet Management software/applications/websites, GPS Fleet Tracking, Job Scheduling And Tracking App, Ram Tracking, Ram Tracking ELD, and Ram Assist and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications (collectively, the "Accused Products").

33. The USPTO duly issued U.S. Patent No. 7,593,751 (the "'751 patent") on September 29, 2009, after full and fair examination of Application No. 11/262,699, which was filed on October 31, 2005.

34. Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent, including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

35. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

36. The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

37. The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38. Defendants have directly infringed one or more claims of the '751 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

39. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the '751 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751).

40. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

41. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

42. For purposes of this Count III only, the Accused Products include, but are not limited to, RAM Tracking Fleet Management software/applications/websites, such as GPS Fleet Tracking, Ram Tracking, Ram Tracking ELD, Ram Assist, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware,

software, functionality, and applications (collectively, the "Accused Products").

43. The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001. A Certificate of Correction was issued on June 25, 2013.

44. Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

45. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

46. The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

47. The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48. Defendants have directly infringed one or more claims of the '586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

49. Defendants have directly infringed, either literally or under the doctrine of

equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

50. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,494,581

51. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

52. For purposes of this Count IV only, the Accused Products include, but are not limited to, RAM Tracking Fleet Management software/applications/websites, such as GPS Fleet Tracking, Job Scheduling And Tracking App, Ram Tracking, Ram Tracking ELD, and Ram Assist; GPS Tracking devices; Dash cams, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications (collectively, the "Accused Products").

53. The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

54. Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

55. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

56. The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

57. The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

58. Defendants have directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

59. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581).

60. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,741,968

61. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as

though fully set forth in their entirety.

62. For purposes of this Count V only, the Accused Products include, but are not limited to, RAM Tracking Fleet Management software/applications/websites, such as GPS Fleet Tracking, Job Scheduling And Tracking App, Ram Tracking, Ram Tracking ELD, and Ram Assist; GPS Tracking devices; Dash cams, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications (collectively, the "Accused Products").

63. The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

64. Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

65. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

66. The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

67. The written description of the '968 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68. Defendants have directly infringed, and continues to directly infringe, one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

69. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the '968 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968).

70. Defendants had knowledge of the '968 patent at least as of the date Defendants were notified of the filing of this action.

71. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent. Defendants have induced and continues to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products. Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4. *See* Exhibit E.

72. Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing

manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendants have been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement. Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent. Defendants' inducement is ongoing. *See* Exhibit E.

73. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent. Defendants have contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing. *See* Exhibit E.

74. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

75. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

76. Defendants' direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

77. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

78. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

79. WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendants, and that the Court grant Fleet Connect the following relief:

   a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

   b. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '968 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '968 patent by such entities;

   c. Judgment that Defendants account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendants' infringing activities and other conduct complained of herein;

   d. Judgment that Defendants' infringement of the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

  e. Pre-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

  f. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

  g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 14, 2025

Respectfully submitted,

By: /s/ *James F. McDonough, III*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, CO 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

**List of Exhibits**

A. Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837
B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751
C. Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
D. Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581
E. Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968